UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
CARLTON A. GREENTANER,

                               Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

18-CV-1042-FPG

DECISION AND ORDER

## INTRODUCTION

On July 14, 2014, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on May 1, 2013. Tr.[1] at 84, 169-70. After the application was denied, Plaintiff timely requested a hearing. Tr. 107-08. On March 16, 2017, Plaintiff appeared with his attorney, Jennifer Dillon, Esq., and testified before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 30-83. A Vocational Expert ("VE"), Jennifer Dizon, also testified at the hearing. Tr. 75-81. The ALJ issued an unfavorable decision on September 11, 2017. Tr. 11-20. Plaintiff then requested review by the Appeals Council, which the Council denied on July 24, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff subsequently brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner which denied his application for DIB.[2] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 8, 11. For the reasons that follow, Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion is GRANTED, and the Commissioner's decision is AFFIRMED.

---

[1] "Tr." refers to the administrative record in the matter. ECF No. 7.

[2] The Court has jurisdiction over this matter under 42 U.S.C. § 405 (g).

## LEGAL STANDARD

### I.    District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.      The ALJ's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Act on June 30, 2015. Tr. 13. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 1, 2013 through the date

last insured.  Tr. 14.  At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: obesity, bilateral carpal tunnel syndrome, and degenerative joint disease of the right shoulder.  *Id.*  He further determined that Plaintiff's sleep apnea, colitis, depression, and anxiety were all non-severe impairments.  *Id.*  At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing.  Tr. 16.  The ALJ then determined that Plaintiff retained the RFC to perform light work, as defined by the regulations, except that he could frequently push or pull with the right arm, occasionally perform overhead work with the same arm, frequently climb stairs and ramps, occasionally stoop, kneel, couch, crawl, handle, and finger, but could not climb ropes, ladders, or scaffolds, work at unprotected heights, or around dangerous moving mechanical parts.  Tr. 16.  At Step Four, the ALJ found that Plaintiff was not capable of performing his past relevant work.  Tr. 18.  The ALJ then proceeded to Step Five, where he determined that there were jobs in the national economy that a person of Plaintiff's age, education, and work experience could perform.  Tr. 18-19.  Specifically, the ALJ found that Plaintiff could work as a counter clerk and furniture rental consultant.  *Id.*

## II.    Analysis

Plaintiff essentially advances two arguments, both of which address the ALJ's formulation of his RFC.  ECF No. 8 at 16-26.  Plaintiff first argues that the ALJ failed to resolve a conflict that was created at the hearing between the VE's testimony about the occupations that an individual of Plaintiff's age, education and work experience could perform, and the description of such occupations provided by the Dictionary of Occupational Titles ("DOT").  *Id.* at 16-21. Plaintiff also argues that the ALJ failed to determine that his depression and anxiety were severe impairments and, as such, failed to consider them in his RFC assessment.  *Id.* at 21-26.  The Court disagrees with both arguments for the following reasons.

4

Plaintiff argues that the VE's testimony about a hypothetical individual who could occasionally perform overhead work with his right arm and was able to perform the occupations of a counter clerk and furniture rental consultant, was inconsistent with the DOT's description of these jobs. ECF No. 8 at 16, 20.  Plaintiff submits that according to the DOT, both occupations require *frequent* reaching.  *Id.* (emphasis added).  What is confusing, however, is that throughout his brief, Plaintiff also repeatedly argues that the DOT requires individuals capable of working in these occupations to perform overhead work *occasionally.  Id.* at 18, 20.  Moreover, it is unclear from his briefing whether Plaintiff takes issue with the VE's use of the term "overhead work" in her descriptions of the available occupations, instead of the general term "reaching" used by the DOT.  *Id.*  at 18.  Plaintiff did not clarify his argument in his reply brief, therefore, the Court is left in the dark as to the exact nature of the purported conflict between the VE's testimony and the DOT's description of the jobs that the VE testified about, which the ALJ, as he alleges, failed to resolve in Step Five.  Be it as it may, the Court does not find any error in the ALJ's handling of the Step Five analysis.

During the hearing, one of the ALJ's hypotheticals included an individual, who, among other things, was limited to light work with frequent push and pull with his right arm, but only with occasional overhead work with the same arm and occasional handling and fingering.  Tr. 78. In response to the hypothetical, the VE testified that based on the DOT, such individual would be able to perform jobs of a counter clerk and furniture rental consultant.  Tr. 79.  The VE specified that the DOT does not differentiate between a claimant's ability to perform work on the right or the left side of his body when describing specific jobs, and, as such, the jobs that were provided by the VE applied to an individual who was able to perform jobs bilaterally.  Tr. 77.

The Court finds that the VE's testimony was consistent with the DOT's description of both occupations as they require only *occasional* reaching, i.e., reaching that exist up to 1/3 of the time. *See* DOT 249.366-010, 1991 WL 672323; DOT 295.357-018, 1991 WL 672589 (emphasis added). Because "reaching" is defined as extending the hands and arms in any direction, *see* SSR 85-15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985), the Court does not find a conflict between the VE's testimony that a hypothetical individual who, among other requirements, could occasionally do "overhead work," could perform jobs of a counter clerk and furniture rental consultant, and the DOT's description of both occupations because they require only *occasional*, as opposed to *frequent*, reaching. Because there was no conflict to resolve, the ALJ rightfully relied on the VE's testimony when he formulated Plaintiff's occasional overhead work with his right arm.

Plaintiff further argues that the ALJ failed to consider his depression and anxiety as severe impairments in Step Two of the sequential analysis, and, as a result, erroneously formulated his RFC without including any mental limitations, or providing consideration for his depression, anxiety, and inability to handle stress. ECF No. at 21-26. The Court disagrees.

As a general matter, in Step Two of the analysis the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits claimant's physical or mental ability to perform basic work activities. *See* 20 C.R.F. §§ 404.1509, 404.1520(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

6

Although Plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 266 (N.D.N.Y. 2012) (internal citation omitted). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled is made at [Step Two] when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Jan. 1, 1985). Such determination is made after the ALJ carefully evaluates the medical findings that describe the impairment and makes "an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities[.]" *Id.* at *4.

Here, the ALJ properly concluded that Plaintiff's depression and anxiety did not cause more than minimal limitations to Plaintiff's ability to perform basic work activities. Because "[a]t the [S]econd [S]tep of sequential evaluation . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on [a claimant's] ability to do basic work activities," *see id.*, the ALJ here properly assessed the medical evidence and determined that Plaintiff's mental impairments caused no more than "mild" limitations in all functional areas. Tr. 15. The regulations provide that when the ALJ rates a claimant's mental limitation as "none" or "mild," the ALJ can find the claimant's impairment not severe, "unless the evidence otherwise indicates

that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

In support of his argument that depression and anxiety caused him more than minimal limitations in his ability to perform basic work activity, Plaintiff relies heavily on his hearing testimony when he discussed having regular panic attacks that affected his employability.   ECF No. 16 at 4.  However, such testimony was neither supported by the objective medical evidence contained in the record, nor by the opinion evidence, and, as such, was insufficient to establish that his depression and anxiety were severe.  Specifically, the record demonstrates Plaintiff's largely normal status examinations during the relevant time period when he often appeared alert, cooperative, and pleasant with normal attention, concentration, mood, and speech, coherent thought process, and stable memory.  Tr. 300, 302-03, 305, 309-10, 316, 318, 329, 332, 384, 487, 490-91, 494, 497, 500, 504, 506, 560.  Even though some of Plaintiff's treating providers, including his primary treating physician Dr. Rodes, noted the chronic nature of Plaintiff's anxiety, they, nonetheless, indicated that it was stable and well-controlled by medication such as Xanax, Celexa, Cymbalta, or Klonopin.[3]  Tr. 14, 303, 307, 310, 316, 324, 327, 334, 494-95; *see Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (treatment notes showing plaintiff being stable and responsive to treatment supported the ALJ's conclusion that despite suffering from a mental disorder, plaintiff could perform work on a regular and continuing basis).

Additionally, the record demonstrates Plaintiff's limited engagement in mental health treatment from the onset date to the date last insured.  Even though he admits that he did not engage in specialized mental health treatment prior to the date last insured, Plaintiff, nevertheless, argues that the history of treatment by neurologist Dr. Frost and the referral to psychiatrist Dr. Capote

---

[3] Plaintiff primarily took Klonopin to treat his tremors, however, the record revealed that it also alleviated his anxiety symptoms. Tr. 494.

made by Dr. Frost, are sufficient factors to demonstrate that his anxiety and depression caused him more than minimal limitations.  ECF No. 8 at 25.  Plaintiff's argument is misplaced because Dr. Frost was Plaintiff's neurologist, who mainly treated him for tremors and obstructive sleep apnea, and who, while noting Plaintiff's anxiety, never provided mental health treatment or prescribed medication to treat it.  Tr. 268-88; *see Taylor*, 32 F. Supp. 3d at 266 (the mere presence of an impairment or a diagnosis of impairment is not sufficient to render a condition severe).  His treatment records discussed Plaintiff's largely normal mental health symptoms and that Plaintiff's anxiety was managed by Dr. Gupta.  *Id.*  However, Plaintiff only saw Dr. Gupta once in 2013.  Tr. 384-87.  In fact, aside from the 2013 treatment note from Dr. Gupta, the record does not demonstrate that Plaintiff sought regular mental health treatment from the onset date to the date last insured.  "Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, his inaction may appropriately be construed as evidence that the condition did not pose serious limitations."  *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018); *see also Scott v. Colvin*, No. 13-CV-6277 (MAT), 2014 WL 2818668, at *7 (W.D.N.Y. June 23, 2014) (RFC was supported by substantial evidence when the record contained evidence which showed that despite mild to moderate limitations, plaintiff's mental health treatment was conservative, and managed with medication and treatment).

Indeed, Plaintiff's consultation with Dr. Gupta in November 2013 was the only contact with a mental health professional that he had during the relevant time period.  Tr. 384-87.  During the examination, Plaintiff was alert, awake, fairly calm, cooperative, and interactive, with appropriate eye contact, fair memory, organized and goal-oriented thought process, and intact judgment and insight.  Tr. 386.  Dr. Gupta assessed Plaintiff with panic disorder with agoraphobia and continuous alcohol abuse, counseled Plaintiff on the effects of alcohol on his mental health,

9

and recommended that Plaintiff attend counseling to reduce panic attacks, anxiety disorder, and alcoholism. *Id.* Plaintiff never followed up with Dr. Gupta as prescribed and waited nearly three years before he consulted with psychiatrist Dr. Capote in August 2016 about the worsening on his anxiety. Tr. 494, 497. Importantly, Plaintiff's visit with Dr. Capote took place over a year after the date last insured, and, as such, Dr. Capote's assessment of Plaintiff's mental limitations was properly afforded little weight by the ALJ. Tr. 18. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (findings the ALJ's denial of benefits was supported by substantial evidence where the record did not support that plaintiff was disabled prior to the date last insured); *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017), *aff'd*, 746 F. App'x 83 (2d Cir. 2019) ("[W]hen a claimant does not show that a currently existing condition rendered [him] disabled prior to [his] date last insured, benefits must be denied.").

Plaintiff takes issue with the ALJ affording "great weight" to the opinion of the consultative psychologist Dr. Ransom, arguing that the ALJ failed to follow Dr. Ransom's findings about his mildly limited abilities to perform complex tasks, relate adequately with others, and deal with stress. ECF No. 8 at 22. Plaintiff's argument is misplaced. Following Plaintiff's examination, Dr. Ransom determined that Plaintiff had no limitations in the following and understanding simple directions, performing tasks independently, maintaining a schedule, and learning new tasks domains. Tr. 356. She also opined that due to his mild unspecified anxiety disorder, Plaintiff would have mild difficulties performing complex tasks, relating adequately with others, and dealing with stress, and that his mild psychiatric conditions would not significantly interfere with his ability to function on a daily basis. *Id.* Importantly, during the evaluation, Plaintiff denied having anxiety and panic attacks, and presented himself as having intact memory, attention and concentration, coherent thought process, appropriate affect, speech and thought content, and

neutral mood. Tr. 354-57. Plaintiff's argument fails to appreciate that it has been well-recognized that the ALJ's conclusions need not perfectly correspond with any of the opinions of medical sources contained in the record because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56 (internal quotations and citations omitted). Instead of providing support for Plaintiff's argument, in reality, Dr. Ransom's findings support the ALJ's determination that Plaintiff was only mildly limited in understanding, remembering, and applying information, interacting with others, concentrating, persisting and maintaining pace, and adapting or managing oneself. Tr. 15. Because "[a] consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision," *Sloan v. Colvin*, 24 F. Supp. 3d 315, 326 (W.D.N.Y. 2014), the ALJ properly afforded great weight to Dr. Ransom's opinion and relied on it to determine that Plaintiff's depression and anxiety were not limiting impairments that would warrant the inclusion of any mental limitations in Plaintiff's RFC. *See Sherrill B. v. Comm'r of Soc. Sec.*, 5:17-CV-754 (ATB), 2018 WL 4150881, at *9 (N.D.N.Y. Aug. 30, 2018) ("Because the ALJ considered the objective medical evidence, Plaintiff's daily activities and the hearing testimony in determining that Plaintiff's diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence.")

Lastly, the Court finds that even if the ALJ erred in not including nonsevere limitations or specifically discuss Plaintiff's ability to handle stress in his RFC, such error would not have warranted remand. "Because stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called 'low-stress' jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *Collins v. Colvin*, No. 15-

CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016) (internal quotations and citations omitted). However, an RFC determination may adequately account for the claimant's stress-related limitations even when it does not explicitly reference them. Typically, "an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019). Here, the hypothetical question formed by the ALJ was consistent with the findings of Dr. Ransom about Plaintiff's mild limitations in most mental domains, and included an individual who could perform simple instructions and tasks without supervisory duties, independents decision making, or strict production requirement; involve only minimal changes in work routine and processes; and involve frequent interaction with supervisors, co-workers, and the general public. Tr. 78. Based on the hypothetical, the VE identified two jobs that would be available to such individual, both of which were unskilled occupations. Tr. 79. Therefore, the Court finds that the ALJ accounted for Plaintiff's mild limitations in his ability to handle stress. *See, e.g., Cowley v. Berryhill*, 312 F. Supp. 3d 381, 384 (W.D.N.Y. 2018) (plaintiff's moderate limitations in handling stress were accounted by limiting him to simple, unskilled tasks with occasional changes in the work setting); *Cosme v. Colvin*, 15-CV-6121P, 2016 WL 4154280, at *13 (W.D.N.Y. Aug. 5, 2016) (RFC adequately accounted for plaintiff's stress-related limitations when it involved unskilled positions and was based on medical opinion of the record); *see also Reyes v. Colvin*, No. 14-CV-734-JTC, 2016 WL 56267, at *6 (W.D.N.Y. Jan. 5, 2016) (even when the ALJ did not specifically include stress limitations in his RFC assessment, it was consistent with the findings of the consultative medical sources, who considered plaintiff's stress-related limitations, plaintiff's hearing testimony, opinions of treating physicians, and objective medical evidence contained in the record).

Therefore, for the above reasons, the Court does not find any reasons to disturb the ALJ's determination of Plaintiff's RFC and finds that it was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is DENIED, the Commissioner's motion for judgment on the pleadings (ECF No. 11) is GRANTED. The Commissioner's decision is AFFIRMED, and Plaintiff's complaint is DISMISSED.   The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: September 30, 2020
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

13